315-610, people of the State of Illinois-Appalooh, by Richard Leonard v. Daniel Johnson, appellant by Maureen Williams. Ms. Williams. Thank you, Justice. May it please the Court, Counsel, I'm Maureen Williams and I represent Daniel Johnson in this matter. If we start with the Constitution, every defendant has a right, obviously, to a jury trial, if my client was denied the right to have a jury trial because of the actions of the trial court. The standard of review in determining whether the evidence should have gone back to the jury room, the decision as to which evidence item should be taken into the jury room rests within the discretion of the trial judge, whose decision will not be disturbed absent the showing of prejudicial abuse. And I'm claiming our argument is that there was an abuse of discretion. A prejudicial abuse occurred because the ruling was arbitrary, fanciful, unreasonable, or when no reasonable person would take the same view. This is an ironic case because when I was preparing for oral argument, I was thinking, well, you know, I have to bring an insufficient evidence argument. And it is an insufficient evidence case because if you view the video, it doesn't support the jury verdict. But knowing that appellate courts shy away from upsetting what a jury has done, what has reviewed the evidence, and the jury is in a much better position than we are to say what the evidence looked like. In that case, this was not allowed to happen. Instead, and I'll get to why I'm saying that the jury was, its duty was taken away from it. But then the part that's ironic is that if this court, if this appellate court affirms the trial court's decision to not let that video go back to the jury room, it's in effect saying to the trial court, you know, we don't like to upset a jury verdict. We don't like to overrule what the jury has decided. But it's okay for you, judge, to go ahead and do that. It's okay for you to step in the shoes of a jury because that's exactly what happened in this case. The jury went out. They did not have a video monitor in the jury room, which, you know, the transcript shows that the prosecutor, I don't know if he just realized he was even saying it, but he had said, you know, in other cases, the videos go back and the jury just goes over and over and over again. So he knew that it was possible to have equipment back in that jury room. And he also knew it was to his benefit to not have it go back. I submit it was deliberate and it shows that it was deliberate because then after lunch a motion to get that video back there was brought by the defense attorney and the prosecutor fought strenuously against it. So the jury gets back there. They say, we need the video, number one piece of evidence. The state might say, oh, the video, that's not so important. That's not the number one piece of evidence. They have the officer's testimony. But I submit that if you have 100 officers come in and testify, the jury is always going to go for the real thing. They want to see it for themselves. And they had a video introduced into evidence. There was absolutely no reason why they could not have witnessed that for themselves. They viewed it over and over if they wanted to. But instead they let the court know, we want to see the video. So the judge decides, okay, we're going to bring them in the courtroom. The courtroom. And he says, we're going to have, we're going to be here. The defense attorney is going to be here. The prosecutor is going to be here. And the defendant is going to be here. And the defense attorney was saying, why do we need to be here? He was the only one that, you know, kind of like a wake-up call. Why do we need to be here? Something's not right. By them being in the room when this video was aired to the jury in the courtroom, they effectively blew the deliberations. Deliberations are supposed to be sacred. We don't know what's happening. We don't know what they're thinking, what they're saying. If they want to stop the video a million times, they can. If they want to rewind it, if they want to fight over it while they're viewing it. Whatever they want to do. I mean, that's the frustrating part is that we'll never know what they do in the jury room.  But while they're viewing it in the courtroom, there are other people in there with them? Yes, Justice. That is one of my concerns. My concern is by others being in that courtroom with them, controlling the video monitor, they put themselves right in the middle of jury deliberations. They were saying, this is what you're going to see. The court said it's going to be silent, and it was. But the defendant is sitting right there when they're watching this video, and they got to watch it once. It's twofold. I think it was wrong to have the video shown in the presence of others. It should have just been the jury. And it was wrong that it didn't go back there, or they weren't able to start and stop the video machine whenever they wanted to. It reminds me of a, the only analogy that came to mind was, it's real popular nowadays for people to say, well, we hate the rich, we hate the 1%. You know, you got to play down success. We don't want anyone successful. We hate the rich. Why does anyone need all that money? And they say, you know, they make it their business. Like, why does anyone need all that money? And it's a precursor to take that money from them. No one needs that much money. Let's take it in taxes. It's the same thing here. It's like, I might, you know, if someone wants to make a lot of money, that's their problem, and it's no one else's business. And it's, if you say, why do you need all that money? You're saying, well, says you, you don't think they do. Maybe they like to hoard money. Who knows? In this case, at the motion to get the video back there after lunch, the court says, well, here's what we're going to do. And if it ever comes up again, then I'll address it again when presented to the court. They're saying they already saw it. And, you know, even in the state's appellate brief, they said, they already saw it. The jury saw the video. Like, what more do they want? And I'm saying, what is it to you? What, that says you to the court, the prosecutor. It's up to the jury how many times they want to see that video and in what way, shape, or form they want to see the video. Maybe they wanted to see whether the officer kicked my client once the door was shut. I had to view the video about 20 times before I could decipher what happened. And it looks like something did happen. If the jury would have been able to see, to have witnessed that, maybe that's what they wanted to see. It would have blown the credibility of these officers. But to sit there and say, they already saw it, that's enough. It's not, the court is not in a position to say when it's enough for the jury to see the video. It's not up to them. It's not up to the prosecutor. And I submit that the prosecutor knew exactly what he was doing when it didn't go back there. The trial court also did not perform a balancing test. It's required. The state in its appellate brief says, well, the trial judge's comments indicate that he performed a balancing test. We don't know which comments they were. And that the judge must have performed a balancing test because he's presumed to know the law. This judge especially is not afraid to talk. And he can reiterate and reiterate and reiterate. And his accepting a guilty plea alone takes 30 minutes. He is not afraid to say on the record his reasons. And he didn't say on the record any reasons. He didn't do a balancing test. If he would have, the outcome had to have been different. It should have been different. There's no reason that he gave other than convenience. And it's been proven, or it's in the transcript anyway, this video machine could have rolled back there. And the prosecutor knew that the defense attorney was at his mercy because he didn't know how to operate a – he didn't know how to push a button. But he was – he knew that he was at his mercy. He didn't say – you know, normally I could not find a case where the – usually it's the state or the defendant saying, no, that's not going back there. Those pictures are too gory or whatever. This case, the defendant wants it to go back there. So when you're looking at prejudice, it kind of eliminates that because it's the defendant who wants it to go back there. Probative, of course it's probative. It's the actual video. It's actually what happened. It's the number one piece of evidence. No matter what anyone says, it's the number one piece of evidence. So it is highly probative. And there's absolutely no reason it should not have gone back there. And by – you know, when I look at why I'm claiming that the evidence was insufficient, the number one reason that supports that argument is that the state did not want it to go back there. Any other time, if that video would have helped the state, I can guarantee it would have been back there. It would have been loaded in the machine, ready to go. Finally, in conclusion, instead of asking this court to find that the evidence was insufficient, although I do argue that it was insufficient because this is a different case. This appellate court cannot say, well, the jury was able to assess the witnesses. They were able to deliberate. They weren't. They were cut off from deliberating the way they wanted to deliberate. We'll never know how they wanted to deliberate, but we do know that it was aborted. Instead of asking this court to find that there was insufficient evidence, I'm asking the court to order a new trial so that this number one piece of evidence could go back to the jury room so that the court and the state's attorney is not sitting in the middle of deliberations. Thank you. Thank you, Ms. Williams. Mr. Leonard? May it please the court, counsel, I respectfully disagree with defense counsel's argument that the defendant did receive a fair trial. The issue here is whether the trial judge abused his discretion when he allowed the video to be played in the courtroom. The trial judge is the gatekeeper of the evidence, and we have to decide, this court has to decide, whether that was reasonable for the trial judge to handle the jury's question that way or not. In this case, the jury saw the entire video during the trial. After deliberations, they sent a note back asking to see the video again. The trial judge was very cautious and went from an incremental approach. There was some discussion between the attorneys and the trial judge, and the trial judge decided that yes, we would just bring the jurors into the courtroom and the jury would see the video again and then deal with the next question if the jury was satisfied with that approach. Apparently, the jury was satisfied with that approach because they came back later with no questions but a guilty verdict on all counts. It really doesn't matter that the defendant, the prosecutor, or the trial judge were there. They were all silent. The jury simply wanted to watch the video. It must have satisfied their inquiry, and the trial judge's approach here can't be said to be arbitrary, fanciful, unreasonable, or where no reasonable person would take the view of the trial judge. Would this be a different case if the jury had asked to bring it back to the jury as opposed to the defense counsel? Could you repeat your question? I'm sorry, would this be a different case if the jury itself had asked for the detainee to be brought back to the jury as opposed to the defense counsel? No, it wouldn't be a different case. I don't know why the prosecutor objected to the video going back to the jury room. It was the prosecutor who entered the video into evidence. The video was inculpatory, not exculpatory. I don't know if you have watched the video yet, but there was nothing on that videotape that would be helpful for the defendant. If I was the prosecutor, I would not have objected. If you look at my brief, the evidence of the defendant's guilt was overwhelming. The defendant would have been found guilty of the offenses, even if the video and the TV and all the equipment was sent back to the jury. And that would be my harmless air argument, because this was an evidentiary issue. There's no reasonable probability that the jury would have quitted the defendant, even if the trial judge had acted the way the defendant wanted him to. I don't see this being a very denial of his justice. The trial judge gave the jury what they wanted. If they wanted to see the video again, the trial judge was open to other suggestions. In fact, one of them was sending the video equipment back to the jury room. And under these circumstances, I don't think this court can say that the trial judge's decision and approach was an abuse of discretion here. Mr. Leonard, you said that the trial court has the discretion, because it's the gatekeeper of the evidence, to make decisions about the evidence. Yes. Does the trial court have the discretion to vary the requirements of deliberation, to say that other people, including the parties, can be present during the deliberation? Well, the trial judge has the authority in the courtroom, and that's what the trial judge decided the jury was not deliberating when they were in the courtroom watching the video. What were they doing? They were simply watching the video. And then they stopped their deliberations, they watched the video, then they went back to the jury room and continued their deliberations. I don't find that that was a reasonable approach by the trial judge. It seems to me that you're speculating when you say that they stopped their deliberations. Apparently, the jury wanted, as part of their deliberations, to watch that tape. And it may be that they wanted to be able to point out to one another, well, look at this, and I think that shows this, and this shows this. And they didn't have the opportunity to do that, because they were viewing the tape with the parties present. That's what the defendant argues, and I think that would be speculation, because we don't know why the jury wanted to see the video, but they did see the video, and they did not ask again to have the video brought back to the jury room. It must have been sufficient. I think my question is a little more basic than that. Okay. The trial is over, right? The trial is over. The jury is deliberating, right? Yes. The jury says, we want to see the tape. Yes. The trial court says, okay, I'm not going to send the tape back to your room where you're deliberating. I want you to look at it in the courtroom. Yes. And I'm going to allow the defendant and the defense attorney and the prosecutor and me to be in here while you're doing that. Yes. Why is that not deliberation? They are not deliberating. They're simply watching the videotape, and I don't believe that that would be an abuse of discretion by the trial judge. Okay. They're watching the videotape as part of what? Just as part of they're seeing the evidence again. They wanted to see the evidence again. They saw the evidence again. And typically, where do they do that? They can do it in the jury room, or they can do it in the courtroom. The trial judge's approach here was not unreasonable. Even though there were other people in the room, the jury was not deliberating. They were just asking to see the video. They saw the video, went back to the jury room, and discussed it. I don't believe that that was an abuse of discretion. If the trial court had sent the tape back to the jury room, would they have been deliberating? Yes, they would be deliberating. Okay. And why were they not deliberating? Because the trial court said, I'm not sending it back there. I want you to look at it here? Yes. He said, I want you to watch the video. They watched the video, then they went back and began deliberations again. This would be similar to a lunch break. The jury takes a lunch break. They're deliberating in the morning, take a lunch break, they come back, they begin deliberations again. There's nothing extraordinary or unreasonable about the trial judge's approach here. So you're saying that watching this tape was the equivalent of going out to lunch? Not going out to lunch, but watching the video. And that's all the jury has to see. Mr. Leonard, could I ask you a question? Yes. I had the great honor of presiding over many, many, many jury trials in the trial court. And when you allow a defendant and his attorney to be in the courtroom with the judge and the prosecutor, jurors don't always just watch what's in front of them. They read the judge's face. They watch the defendant's reaction. Because the evidence had ended, I might be able to accept your position that this is just a break where the tape was published to the jury together. But because their observations were not in an isolated setting independent of the defendant and the prosecutor, how is that a neutral kind of setting that we require once a jury is sequestered and the bailiff is sworn? Well, the jury was instructed to watch the videotape. They were instructed to decide the case based on the facts in the courtroom and not other extraneous things like whether the defendant was present or the judge's expression on his face. We just have to assume that the jury followed the instructions that was given to it. This was a jury request to see the tape, is that correct? Yes. They didn't get it initially and then they asked for it? No. It was published in the courtroom? Yes. Everybody watched it together? Yes. And then the videotape itself did not go back to the jury? No. And then the jury sent a question out asking to see the video again, and this was the trial judge's approach. And I'm arguing that this was not an unreasonable approach. But even if you find that it was unreasonable, it was harmless error. There's no reasonable probability that the jury would have acquitted the defendant of the offense. The video was inculpatory, plus two officers testified to what happened regarding their injuries. The evidence is overwhelming in my view, and the video was nothing but inculpatory. If you don't have any other questions, I ask that you affirm the trial judge's order and find the defendant guilty. Thank you, Mr. Larkin. Ms. Williams, any further? Yes, Your Honor, just briefly. I just want to address one tiny little area that Mr. Leonard brought up. The trial court did not say to the jury after they viewed the video in the courtroom, now if you want to see it again, come back, we'll show it as many times as you want. It never said anything like that. Instead, the court said to the lawyers when the jury was out of the room, now if it comes up again, I'll address it then. It's like, hold your breath, maybe they won't, you know, just be real quiet, maybe they won't bug us again. And then the jury's going back to the jury room going, a lot of good that did. Why would we even ask again? Because we're just going to get the same treatment. We're going to go in the courtroom. We're going to be looked at like we're bothering people. And then, you know, the state right now says apparently they were satisfied, or this must have satisfied their inquiry by going into the courtroom. We don't know that. We don't know that. I just know that if I was in that position, I'd go back to the courtroom and say, well, a lot of good that did, be done with it, and then just go on my memory. But I sure as heck would want to have my hands on that video. Thank you. Okay, thank you, and thank you both for your argument today. We'll take this matter under advisement. Thank you.